# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

UNITED STATES OF AMERICA,

       Plaintiff,      :      Case No. 3:08-cr-041
                                          Also 3:12-cv-397

                                          District Judge Thomas M. Rose
    -vs-                                   Magistrate Judge Michael R. Merz
                               :

EVERARDO RODRIQUEZ-VILCHIS,

       Defendant.

---

## SECOND SUPPLEMENTAL REPORT AND RECOMMENDATIONS

---

      This § 2255 case is before the Court for decision on the merits of Petitioner's Five Grounds for Relief. Because the docket is potentially confusing about prior recommendations, the Magistrate Judge includes discussion and recommendations on all Grounds for Relief in this one document.

      The § 2255 Motion contains five grounds for relief. The first is a claim for equitable tolling as to Grounds Two, Three, and Four. Ground Five purports to arise under *Missouri v. Frye,* 566 U.S. ___, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012); and *Lafler v. Cooper*, 566 U.S. ___, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012). Because these cases were decided in March, 2012, Defendant does not need equitable tolling as to Ground Five because it was filed within a year of those decisions.

**Equitable Tolling**

The original Report in this case (Doc. No. 210) concluded that Defendant was not entitled to equitable tolling. The Report therefore recommended dismissal of the Motion with prejudice as barred by the one-year statute of limitations for § 2255 Motions.

Petitioner's first set of Objections accused the Magistrate Judge of denying equitable tolling because Defendant is Hispanic (Doc. No. 211, PageID 718). The Magistrate Judge then withdrew the original Report and gave Defendant an opportunity to file additional facts showing his entitlement to equitable tolling by February 1, 2013 (Order of December 31, 2012, Doc. No. 213). That Order required Defendant to file:

> an affidavit setting forth all of the facts known or available to him in support of his claim of equitable tolling. That would include but not be limited to the facts which answer the questions posed in the first Report. In addition, Defendant shall obtain from the prison library personnel an affidavit of the materials available to prisoners in Spanish with respect to the time limits for filing under § 2255 and when those materials became available.

*Id.* at PageID 726.

Defendant's purported compliance is in a document now filed as "Defendant's Motion to Supplement his 2255" (Doc. No. 219).[1] The Motion and the accompanying affidavits were both prepared by Daniel Sanchez, Sr., an orderly in the prison library at FCI Gilmer.

Defendant avers in his own Affidavit that he asked his attorney to file an appeal both right before and right after sentencing on June 30, 2009 (Doc. No. 219-1, PageID 758). He says he thought his appeal was pending all this time because his lawyer said he would come to see

---

[1] The facts surrounding the attempted filing of this document, which consisted of sending two copies to former Assistant United States Attorney William Schenck, are set forth in the Magistrate Judge's Order Withdrawing Supplemental Report and Recommendations (except for Ground Five) and Ordering an Answer (Doc. No. 225).

him to discuss the appeal. *Id.* at ¶ 3. He admits he never received any notice about appeal from this Court or the Sixth Circuit Court of Appeals. *Id.*

Defendant avers through Sanchez that he never saw any materials in Spanish about time limits on filing appeals or § 2255 motions nor had his lawyer or anyone else ever explained those rules to him. *Id.* at ¶ 4. He avers there was no bilingual prison law clerk at FCI Gilmer until Sanchez came in September, 2012. *Id.* at ¶ 5.

Defendant avers he had a friend write a letter to his lawyer sometime in 2011 on a date he cannot remember; no copy of the letter is tendered. *Id.* atPageID 759, ¶ 6. He says he tried to reach Mr. Coughlin by telephone on undisclosed dates but was unsuccessful. When asked by Sanchez if he had sought help from prison staff at FCI Gilmer or elsewhere, he said that he had tried "but that staffs responded extremely hostile towards him, and other Hispanic inmates when dealing with communication." Defendant speculates "[t]hat staffs respond negative to deter inmates of [sic] requesting legitimate requests." *Id.* at , PageID 760, ¶ 9.

Defendant also filed an Affidavit from Sanchez who avers that he has been serving prison terms since 1977 (Doc. No. 219-2, ¶ 1). In January, 2013, after Defendant received the Court's December 31, 2012, Order, Sanchez asked if there was a Spanish bilingual law clerk and was told "no." Sanchez offered his services to the prison in that capacity, but had not received an answer as of the date of the Affidavit. He explains that Defendant and he could not comply with getting an affidavit from prison library personnel because:

> Unfortunately these prison staffs are not kind or helpful individuals, and [it] would be impossible for Mr. Rodriquez-Vilchis and/or I to go on his behalf and request such materials because none exist. It would mean for the prison administration to admit to denying and depriving Hispanic prisoners the basic requirement of laws, which they would not do.

3

> For both Mr. Rodriguez-Vilchis and I to do such would most likely trigger this administration to fire me from my job, and to place us in segregation unit on false charges. I [have] been active in litigating grievances against every prison administration for staff misconduct, invidious and racial discrimination and in return the prison administration has placed me in their segregation on false charges and transferred across the United States in retaliation of filing complaints and/or exercising my constitutional rights. With due respect to this court, in which I would like to go and request such from the prison library staffs in behalf of this court, it would be impossible to perform based on the facts provided herein.

*Id.* at ¶ PageID 764-65, ¶¶ 6-7.

In examining Defendant's Affidavit respecting his own efforts to pursue his case, he does not say anything about his ability to understand English.[2] As to Defendant's efforts to find out about his case, he claims to have had a letter written sometime in 2011 and to have attempted telephone calls at undisclosed dates. Asked to provide some proof from prison officials about the availability of Spanish language materials, Defendant says he cannot do that because the prison staffs would (1) not comply, and (2) retaliate. As proof of the animus of prison staffs, of course, Defendant offers the Affidavit of Mr. Sanchez.

The Supreme Court has expressly held the one-year statute of limitations in 28 U.S.C. § 2244 is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 48 (2010). The one-year statute of limitations in 28 U.S.C. § 2255(f) was adopted as part of the AEDPA, the same statute that adopted the limitations in § 2244, so there is no reason to infer the Supreme Court would not allow equitable tolling for § 2255 motions as well.

However, a petitioner is "'entitled to equitable tolling only if he shows '(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011), *quoting*

---

[2] In the § 2255 Motion, Defendant says he "does not speak, write, or understand the English language. . . ." (Motion, Doc. No. 209, PageID 691.) This statement is not repeated under oath in his Affidavit.

4

*Holland*, 130 S. Ct. 2549, 2562 (2010), *quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

No notice of appeal was ever filed in this case and the time to do so expired fourteen days after judgment, or on August 18, 2009. The statute of limitations in § 2255(f) therefore expired on August 19, 2010. Defendant signed the § 2255 Motion of November 15, 2012, and it is deemed filed as of that date. *Houston v. Lack,* 487 U.S. 266 (1988); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). The § 2255 Motion is therefore more than two years late. Rodriquez-Vilchis' efforts to pursue his rights during the three years after judgment consist of one letter to his lawyer, the existence of which is uncorroborated, and two telephone calls to his lawyers, which are also uncorroborated. This does not constitute the due diligence necessary to ground equitable tolling.

Defendant has a better case on the "extraordinary circumstances" prong of the equitable tolling test because of his infacility with the English language. However, the only proof that there was a total absence of Spanish language materials at FCI Gilmer is Mr. Sanchez's Affidavit, which the Magistrate Judge is unwilling to accept at face value. By his own admission Sanchez has been serving felony imprisonment sentences for more than thirty-five years, a fact the Court is entitled to consider in evaluating his credibility.[3] He avers that any request to prison staff to verify the unavailability of Spanish materials would be counterproductive because they would not admit it and would retaliate against him for asking. Those assertions are inconsistent with this Court's experience of how employees of the Federal Bureau of Prisons react to orders from a federal court. More generally, this Court regularly requires prison staffs from federal and state prisons to file reports of prisoner financial status under the Prison Litigation Reform Act

---

[3] Sanchez has repeatedly accused the Magistrate Judge of deciding against Rodriquez-Vilchis because of bias against Hispanics, of denying Defendant due process by not following standard procedure for these cases, and of taking the Government's side because, he asserts, the Magistrate Judge is "an ex-government prosecutor." At least the last of these accusations shows Sanchez's willingness to play loose with the facts, for the undersigned has never been employed in a prosecutorial capacity by any governmental entity.

and has never been faced with a refusal to provide the required information on request of an inmate or received an allegation that the inmate was retaliated against for making the request . Mr. Sanchez proclaims that he has filed "well over 40 or more prison complaints against prison staffs," (Doc. No. 219-2, PageID 765), yet he was unwilling to ask a prison staff person to give him a statement which had been ordered by this Court.

*Pro se* status and limited law library access are insufficient to ground equitable tolling. *Hall v. Warden*, 662 F.3d 745, 751-52 (6th Cir. 2011).  While not directly in point, the Sixth Circuit has held that 45-day time limit on appeal to Ohio Supreme Court is an adequate and independent state ground of decision and lack of counsel at that stage, lack of a trial transcript, unfamiliarity with the English language, and short time for legal research in prison do not establish cause to excuse this default.  *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004), *citing Murray v. Carrier,* 477 U.S. 478, 494-95 (1986).  If unfamiliarity with English will not excuse missing a 45-day deadline, how will it excuse missing a one-year statute of limitations by more than two years?

The burden is on the petitioner to demonstrate that he is entitled to equitable tolling. *Keenan v. Bagley*, 400 F.3d 417, 420-22 ( 6th Cir. 2005); *Allen v. Yukins,* 366 F.3d 396 ( 6th Cir. 2004); *McClendon v. Sherman*, 329 F.3d 490, 494 ( 6th Cir. 2003); *Griffin v. Rogers*, 308 F.3d 647, 653 ( 6th Cir. 2002).  Defendant has not met this burden.  Grounds One through Four of the § 2255 Motion should therefore be dismissed with prejudice as barred by the statute of limitations.

**Ground Five:  Ineffective Assistance of Trial Counsel in Plea Bargaining**

In his Fifth Ground for Relief, Defendant claims he is entitled to relief because he received constitutionally ineffective assistance of counsel in plea negotiations, relying on *Missouri v. Frye*, 566 U.S. ___, 132 S. Ct. 1399, 182 L. Ed. 2d 379 (2012); and *Lafler v. Cooper*, 566 U.S. ___, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012).  For reasons set forth in the original Report and Recommendations (Doc. No. 210,PageID 709-12), these two cases do not support any relief for Defendant.  In the first place, they do not recognize a new right expressly made retroactive to cases pending on collateral attack.  See 28 U.S.C. § 2255(f)(3).  More importantly, this is not a case where a defendant refused a Government plea offer on bad advice from his attorney, but one where the Defendant rejected an offered plea agreement because he was not willing to provide the Government with the information necessary to make the "safety valve" statute applicable.

In the original Report and Recommendations, the Magistrate Judge found that, even if *Frye* and *Lafler* were applicable to circumstances such as Defendant's, they did not apply retroactively to cases on collateral attack.  (Report, Doc. No. 210, PageID 710-11), *citing In re: Michael Perez,* 682 F.3d 930 (11th Cir. 2012), and *Crockett v. United States*, 2012 U.S. Dist. LEXIS 160384 (S.D. Ohio Nov. 8, 2012), *citing Buenostro v. United States*, 697 F.3d 1137 (9th Cir. 2012), and *Hare v. United States*, 688 F.3d 878, 879 (7th Cir. 2012).  In its Response, the Government cites to the same effect *In re King*, 697 F.3d 1189 (5th Cir. 2012).

In his Reply, Defendant asserts that there is now Sixth Circuit law to the contrary (Doc. No. 237, PageID 957), *citing Titlow v. Burt*, 2012 U.S. App. LEXIS 10241 (6th Cir. 2012).  That case, published at 680 F.3d 577, does not expressly discuss the retroactive application question,

7

but, without discussing it, does apply *Lafler, supra*, to a case on collateral review. The United States Supreme Court has granted certiorari in the case to consider the question.], *Burt v. Titlow*, 2013 U.S. LEXIS 1849, 133 S. Ct. 1457, 185 L. Ed. 2d 360 (2013). At this point in time, it would not be inconsistent with Sixth Circuit law to apply *Frye* and *Lafler* to this case.

## Conclusion

In accordance with the foregoing analysis, it is respectfully recommended that Defendant's § 2255 Motion be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

July 18, 2013.

s/ *Michael R. Merz*
United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).